UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

AMY S.,

     Plaintiff,

 v.

ACTING COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

Case No. 2:23-cv-00416-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

   Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for disability insurance benefits ("DIB") Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 3. Plaintiff challenges the Administrative Law Judge's ("ALJ") decision finding that plaintiff was not disabled. Dkt. 1, Complaint.

   On February 16, 2020 plaintiff filed an application for DIB alleging a disability onset date of December 1, 2016. AR 173. The date last insured for DIB was March 31, 2020. AR 17.

   The application was denied initially and upon reconsideration. AR 121, 128. On December 13, 2021 a hearing was conducted by ALJ Ceclia LaCara. AR 33-51.

   When the ALJ posed the hypothetical to the Vocational Expert, she stated, "this person would be off task an additional 10 percent of the day." AR 47. The ALJ stated

that a person who was off-task for more than 10 percent of the day would not be able to perform in a full time job. *Id.*

On January 18, 2022 ALJ LaCara issued an unfavorable decision finding, at step four, that plaintiff would be able to perform past work as an administrative assistant, and she would therefore not meet the criteria for being disabled. AR 12-32. The ALJ made an alternative decision, at step 5 – finding that plaintiff would be able to perform representative occupations of production assembler, small products I assembler, and sub-assembler. AR 26. The Appeals Council denied plaintiff's request for review. AR 1.

ALJ LaCara found the following severe impairments at step two: degenerative disc disease of the lumbar spine; polyarthritis; migraines. AR 17. Based on these impairments the ALJ found plaintiff to have the Residual Functional Capacity ("RFC") to perform light work with the following additional limitations: frequent climbing of ramps or stairs, occasional climbing of ladders, ropes or scaffolds, frequent balancing, occasional stooping, and frequent kneeling, crouching and crawling. She should avoid concentrated exposure to nonweather related extreme cold, nonweather related extreme heat, excessive noise, excessive vibration, respiratory irritants, such as fumes, odors, dusts gases, poor ventilation, hazards, and unprotected heights. AR 20.

STANDARD OF REVIEW AND SCOPE OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.*

The plaintiff has the burden of proof during the administrative hearing on the first four steps of the five-step review. *Bowen v. Yuckert,* 482 U.S. 137, 140-142 (1987). The Commissioner has the burden of proof for step five, which has two parts; first, the Commissioner is required to consider the plaintiff's physical ability, age, education, and work experience to determine their job qualifications, and second, the Commissioner must decide whether jobs exist in the national economy that plaintiff could perform. 42 U.S.C. § 423 (d)(2)(A); *Heckler v. Campbell,* 461 U.S. 458, 460 (1983).

The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Garrison,* 759 F.3d at 1009. Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

DISCUSSION

Plaintiff alleges that the ALJ erred by improperly rejecting her statements and medical evidence about migraines at steps three, four, and five, and by failing to provide an appropriate limitation for the migraine symptoms in the RFC. Dkt. 7 at 3. The commissioner responds that substantial evidence supports the ALJ's evaluation of plaintiff's migraines. Dkt. 10 at 1.

Plaintiff alleges that the ALJ failed to properly assess at step three whether her migraines meet listing 11.02B because the ALJ's own analysis of the medical record contradicts the ALJ's finding that the medical record fails to establish any neurological

deficits or show that plaintiff suffered from dyscognitive seizures that occurred at least once a week for at least three consecutive months or once every two weeks for at least three consecutive months. Dkt. 7 at 4.

At step three of the evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals a condition contained in the listings. *See* 20 C.F.R. § 404.1520(d). The listings describe "each of the major body systems impairments [considered] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525. An impairment matches a listing if it meets all of the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). An impairment that manifests only some of the criteria, no matter how severely, does not qualify. *Sullivan*, 493 U.S. at 530; *Tackett*, 180 F.3d at 1099. An unlisted impairment or combination of impairments is equivalent to a listed impairment if medical findings equal in severity to all of the criteria for the one most similar listed impairment are present. *Sullivan*, 493 U.S. at 531; *see* 20 C.F.R. § 404.1526(b).

Primary headache disorder is not a listed impairment; the most closely analogous listed impairment is epilepsy (listing 11.02), specifically, paragraphs B or D for dyscognitive seizures. Social Security Ruling ("SSR") 19-4p, *Titles II & Xvi: Evaluating Cases Involving Primary Headache Disorders*, 2019 WL 4169635 (Aug. 26, 2019). "Paragraph B requires seizures occurring at least once a week for at least three consecutive months despite adherence to prescribed treatment." 20 C.F.R. pt 404,

subpt P, App. 1, § 11.02. In considering whether migraines meet listing 11.02B, an ALJ will consider:

>   -A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying headache events);
>
>   -the frequency of headache events;
>
>   -adherence to prescribed treatment;
>
>   -side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and
>
>   -limitations in functioning that may be associated with primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).
>
>   SSR 19-4p.

At step three the ALJ determined that plaintiff's migraines did not meet or medically equal listing 11.02 (Epilepsy) and determined that the record failed to establish that plaintiff suffered from dyscognitive seizures that occurred at least once a week for at least three consecutive months – or once every two weeks for at least three consecutive months. AR 20. When formulating plaintiff's RFC, the ALJ found that the clinical findings failed to support disabling limitations, citing evidence that plaintiff's

migraines were controlled with Methocarbamol which reduced the frequency of the migraines. AR 22.

A medical provider (it is unclear from the record whether this person is a massage therapist, or physician) Andrew McCommons noted on 5-16-2017, that "[plaintiff's] primary concern was a continuous headache with migraines that have occurred in increasing frequency. . . .The highest pain point during the session was found on her right suboccipitalis and rated at an 8 on a scale of 1-10 and was reduced to a 4 during the course of treatment." AR 1734. Later, on 5-31-2017, this medical provider stated that plaintiff reported her headaches were less frequent. AR 1738. Headaches "below the eyes" were again noted in September 2017. AR 1749.

The first brain MRI report in the medical record is from July 2017, when Dr. Hannu Huhdanpaa made the following findings: "(1) No evidence of acute or subacute infarct, acute intracranial hemorrhage, mass effect, midline shift, or hydrocephalus. (2) <u>Few scattered white matter T2/FLAIR hyperintensities, nonspecific, and can be seen with the entire gamut of white matter conditions, including migraine headaches and as sequela of chronic microangiopathy.</u> (3) A 7 mm focus of peripheral T2 hypointensity (series 9 image 22) within the anterior left frontal lobe with associated susceptibility artifact (series 12 image 87), favored to represent a cavernoma." AR 565 (emphasis added). This MRI was referenced by Dr. Wong, AR 676, 677, in November 2019.

In February 2018, Dr. Darius Stephen Zoroufy, M.D. evaluated plaintiff for a sleep disorder, and noted that plaintiff's migraines were significantly improved with methocarbamol and had been reduced from <u>daily</u> (as noted by Dr. Zoroufy on 1-18-

2018, plaintiff had been experiencing "the most significant migraines" when she awoke each morning) to <u>four times per month</u>. AR 445-49.

On May 16, 2018, Dr. Harold Prow described an MRI of plaintiff's brain that showed: "(1) Areas of magnetic susceptibility in the left frontal lobe are not changed. The largest lesion could reflect a cavernous malformation. Other etiologies to consider for remote microhemorrhages would include the sequela of prior trauma or infarcts that had a hemorrhagic element. (2) Stable FLAIR hyperintensities in the cerebral hemisphere white matter are not specific. Commonly, these are seen as the sequela of small vessel ischemic change or in association with certain headache syndromes. (3) No acute or subacute CVA. (4) No enhancing mass is present in the brain parenchyma." AR 550, 553-554.

In August 2019, Dr. Stephen Monteith described a brain MRI that was conducted at Swedish Cerebrovascular Center, where plaintiff was "being monitored for a cavernous malformation which was found upon workup for constant headaches." AR 398-400. Plaintiff did not report headaches at this time. Dr. Monteith described his impression of the MRI: "her cavernous malformation is stable and unchanged since her last visit. As was discussed by Dr. Montheith, the risk of a cavernous malformation bleeding is about 0.5% per year. Once it bleeds the first time, the risk of rebleed doubles. . . . I advise her to go to the ED urgently if she feels a severe, sudden onset headache." AR 400, see also, AR 692-693. The MRI was conducted on 7-25-2019 (AR 469-471), and Dr. Brian Tryon stated his impressions: "(1) No acute/subacute ischemic change. (2) Stable hemosiderin deposition left frontal lobe. (3) Stable minimal white

matter disease. (4) Postcontrast imaging negative. Remaining brain, orbits unremarkable as described." AR 471.

In November 2019, Dr. Anna Wong, M.D. noted that she had been seeing plaintiff since 7-14-2017 for chronic migraines. AR 385, see also, AR 676-681. "Pain starts in her sinuses about 30 minutes after she wakes up." AR 385. Dr. Wong also noted that plaintiff had a subdural hematoma from a motor vehicle accident in 2002. AR 385. Describing plaintiff's migraines, Dr. Wong stated: "headaches are felt in the infraorbital regions and tend to be bilateral. The pain is throbbing and takes one to 2 hours to maximize. It was associated nausea, photophobia and phonophobia. She has no aura phenomenon. Headaches have been present in the morning and this is a new feature. Triggers include missing a meal, hormone changes, stress but down, red wine, high intensity exertion. AR 386. Since she last saw plaintiff on 8-8-2018, Dr. Wong observed: "[plaintiff] has had some medication adjustments for pain and she was told to discontinue her other medications." AR 386. Plaintiff discontinued methocarbamol and a gradual escalation in her headaches occurred. *Id*. Dr. Wong stated that "[plaintiff] would like to restart." *Id*. Dr. Wong recommended that plaintiff should take methocarbamol nightly. AR 389.

In November 2020, plaintiff reported to Dr. Lasley Xiong, D.O. via email that she was experiencing migraines 3-4 days a week again. AR 1188.

In January 2021, Dr. Soto noted that plaintiff had experienced a gradual increase in her migraines to the point where they were, again, <u>occurring on an almost daily basis</u>. AR 1111. Dr. Soto suggested continuing with methocarbamol and a trial of a different drug. *Id.*

1    Dr. Wong noted in March 2021, that plaintiff's migraines had decreased from
2 <u>daily</u> to <u>two days a week</u>, but methocarbamol was no longer helping with muscle
3 tension. AR 1101.  Other various notes in the record indicate that plaintiff's migraines
4 began when she was a teenager – but since 2017 escalated to somewhere between
5 daily and 20 headaches per month. *See e.g.*, AR 386, 449, 1734.

6    On April 27, 2020, plaintiff filled out an adult function report that included a
7 "headache questionnaire"; she reported that she has been experiencing "manageable"
8 headaches since she was a teenager but in the last three years she started waking up
9 with headaches every day. AR 210-220. She stated that headaches prevented her from
10 doing "everything" without medication – with medication, her head is better in about one
11 hour but she is groggy/foggy most of the day. AR 218. She reported that her last three
12 headaches were on April 24, April 20, and April 19, 2020. *Id*.

13   She stated that she experiences throbbing behind her eyes, temples and back of
14 head which will last for a day or two without medication and an hour with medication. *Id*.
15 She reported that afterwards she feels loopy, tired, and mentally fatigued. *Id*. She stated
16 that she was (in April, 2020) taking Zolmitriptan, Acetaminophen, and Methocarbamol
17 for her headaches; she also reported that in the past, she had tried other medications:
18 Sumatriptan (discontinued because of side effects), Rizatriptan (discontinued due to
19 lack of efficacy), and Botox injections. AR 219.

20   At the hearing on December 13, 2021 plaintiff testified that she worked as an
21 administrator for a local soccer club for five years but had to stop working due to
22 constant pain from rheumatoid arthritis and chronic migraines. AR 39-41. She testified

1  that she takes Zolmitriptan to treat her migraines and if that does not work she sits in
2  the dark at her house until she can take more medication. AR 41-42.
3      The ALJ's decision about frequency of migraine headaches (AR 20-22), is not
4  supported by the record. The record shows plaintiff was experiencing migraines at least
5  once a week during the three years leading up to the hearing. *See* AR 445-46, 1101.
6  Additionally, there is not substantial evidence to support a finding that plaintiff's
7  discontinuation of her medication was the result of lack of adherence to treatment –
8  instead, the record shows the discontinuation was ordered by a physician as a part of
9  the larger context of plaintiff's pain management. AR 386. To the extent that the ALJ's
10 decision relied on the temporary discontinuation of methocarbamol, this was error. *See*
11 *Reddick v. Chater*, 157 F.3d 715, 722-723 (9th Cir. 1998) (ALJ may not "cherry-pick"
12 observations without considering context).
13     The ALJ's decision that plaintiff's migraines did not fulfill the detailed description
14 requirement of listing 11.02B is not supported by substantial evidence. The ALJ's
15 decision does not include an analysis on a typical headache event or the limitations in
16 functioning associated with plaintiff's migraines or migraine treatment. According to the
17 assessment by Dr. Wong: "Pain starts in her sinuses about 30 minutes after she wakes
18 up." AR 385. Dr. Wong also noted that plaintiff had a subdural hematoma from a motor
19 vehicle accident in 2002. AR 385. Describing plaintiff's migraines, Dr. Wong stated:
20 "headaches are felt in the infraorbital regions and tend to be bilateral. The pain is
21 throbbing and takes one to 2 hours to maximize. It was associated nausea, photophobia
22 and phonophobia. She has no aura phenomenon. Headaches have been present in the
23 morning and this is a new feature. Triggers include missing a meal, hormone changes,

stress but down, red wine, high intensity exertion. AR 386.  The first brain MRI report in the medical record is from July 2017, when Dr. Hannu Huhdanpaa made the following findings: "(1) No evidence of acute or subacute infarct, acute intracranial hemorrhage, mass effect, midline shift, or hydrocephalus. (2) <u>Few scattered white matter T2/FLAIR hyperintensities, nonspecific, and can be seen with the entire gamut of white matter conditions, including migraine headaches and as sequela of chronic microangiopathy.</u> (3) A 7 mm focus of peripheral T2 hypointensity (series 9 image 22) within the anterior left frontal lobe with associated susceptibility artifact (series 12 image 87), favored to represent a cavernoma." AR 565 (emphasis added). This MRI was referenced by Dr. Wong, AR 676, 677, in November 2019.

Whether this description from Dr. Wong along with the MRI reports would, or would not, meet or equal the listing is a question to be determined on remand. *See, David S. v. Saul,* No. 19-cv-3137 (ADM/LIB), 2021 WL 467348 at *5-9 (D. Minn. Jan. 25, 2021), *report and recommendation adopted*, 2021 WL 465281 (D. Minn. Feb. 9, 2021) (the ALJ's decision was reversed and remanded for failure to adequately develop the record concerning migraines; medical record must contain a detailed description by an accepted medical source that the migraines were "sufficiently debilitating" for the ALJ to evaluate whether the migraines would meet or equal the listing); *Kimberly W. v. Commissioner of Social Security,* No. 20-CV-1291S, 2021 WL 4272289 at *4-6 (W.D.N.Y. Sept. 21, 2021) (MRI of plaintiff's brain showed an abnormal result with T2/FLAIR hyperintensities in white matter of right and left parietal lobes; plaintiff experienced daily migraines that at times became less frequent; ALJ's decision

reversed and remanded for further proceedings, when the ALJ's decision only included a noise limitation in the RFC and did not fully evaluate plaintiff's migraine limitations).

Moreover, for steps four and five of the review process, the ALJ is required to evaluate whether plaintiff's symptoms and limitations – with migraines happening more than once per week, and sometimes daily, for at least one hour – would result in a more restrictive RFC. See AR 47, ALJ's hypothetical to the Vocational Expert, stated only "this person would be off task an additional 10 percent of the day." Yet there was no such limitation in the RFC. Plaintiff stated in the headache questionnaire and in her testimony that she experienced debilitating symptoms and limitations from migraine headaches that would preclude her from being able to sustain work – and the medical record supports the medication side effects, severity, and frequency of the migraine headaches, during the relevant period. *See* AR 41-42, AR 218.

In assessing the reliability of plaintiff's statements, the ALJ must determine whether plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear and convincing reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). In this case, the ALJ did not identify specific, clear, or convincing, reasons supported by substantial evidence to discount plaintiff's statements about the severity or frequency of migraine headaches. As discussed above, the medical evidence established frequency of at least once-per-week headaches. There was evidence of abnormalities in the brain MRIs in 2017, 2018, and 2019, that showed white matter disease associated with migraines, and an abnormality of the left frontal lobe. AR 469-471, 550, 553-554, 565.

1 And, plaintiff's statements about the severity of her symptoms were also supported by Dr. Wong's evaluation. AR 385-391, *see also*, AR 676-681.

An error that is inconsequential to the non-disability determination is harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient and the error is not harmless. *Id; see also, Carmickle v. Comm'r. Spc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).

The only mention of plaintiff's migraine headache limitations in the RFC is to avoid excessive noise. AR 20. Although the ALJ asked the Vocational Expert about the percentage of the workday a person could be off-task, there was no limitation regarding off-task time, or absences due to symptoms, side effects of medication, or medical treatment, in the RFC. *Id.* Therefore, the ALJ's error was harmful, and remand for a new hearing is necessary.

## CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings. On remand the Commissioner is directed to conduct a de novo hearing, allow plaintiff to present additional evidence, conduct the five-step review, consider anew whether plaintiff's symptoms and limitations due to chronic migraine headaches would meet or equal listing 11.02B and also evaluate the impact of her migraine symptoms, side effects of medications, and work-related limitations in formulating the RFC.

Dated this 31st day of October, 2023.

                                                *Theresa L. Fricke*
                                               Theresa L. Fricke
                                               United States Magistrate Judge